### Elam et al. v. Commonwealth.

(Decided May 6, 1938.)

WILLIAM LEWIS & SON for appellants.

HUBERT MEREDITH, Attorney General, and GUY H. HERD-MAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

On Saturday, November 14, 1936, Roy Gibson was robbed. Cecil Lanham and Bud Elam were charged by indictment with this robbery, and upon their trial were convicted. Punishment of each was fixed at imprisonment at three years and six months in the penitentiary. Their motions and grounds for a new trial were overruled, and they have appealed.

## The Facts.

Roy Gibson works for the Louisville & Nashville Railroad Company. This was pay day, and after getting his pay he came to Corbin, and shortly after his arrival he became intoxicated to such an extent that he rented a room at the Bellview Hotel and partially slept off his intoxication. Later, he started out again and soon was joined by Lanham and Elam and a couple of girls and one John Smith, who remained with him. Shortly after nightfall he called a taxi to go home, which was in North Corbin, but these parties remained with him, at his invitation, so they say. All of them got in the taxi, except John Smith and Lanham, who stood on the running board and held to the side of the taxi, until they reached Sander's filling station, where Lanham and Smith got off and followed the taxi on foot. After going about a half mile, the taxi stopped, all of them got out, and the taxi started back to town. The party started to complete the journey on foot. They had gone about 30 or 40 yards when Lanham and Smith overtook them. They were standing talking. The girls were wanting to go back, and Gibson had his arm around one of the girls and was trying to dissuade her. Lanham approached Gibson from the rear, seized him by the shoulders and shook him loose from the girl. Lanham testified he did this in order to liberate the girl, but Gibson testified that Lanham said, "I mean business," and Elam started to search Gibson and directed Gibson to hold his hands up higher and called to Lanham, "Give me that gun." Whereon Gibson raised

his arms and submitted to the search. Elam was seemingly dissappointed in the amount of money he found, and cursed Gibson and said to him, "You've got more money than that." They then took off his shoes and his socks and his pants and searched him thoroughly, so Gibson says, and got from him, according to Gibson, four $1 bills and a package of cigarettes.

Smith did not approve of what was being done and begged Elam and Lanham not to treat Gibson that way. Whereupon Smith was told to "Shut up, or they would knock his brains out." After that Smith left. The girls had turned their backs on the party before the disrobing began. That left only Gibson and the two defendants. They say this disrobing did not occur, and that they did not get any money from Gibson. The two girls and Smith · corroborate Gibson, but they do not know that any money was taken from Gibson; at least they did not see it. The two defendants left, and Gibson, after putting on his clothes, went to Ed Carroll's to call the sheriff's office at London. Two officers came out and arrested Lanham and Elam at Sander's filling station in North Corbin.

The first ground urged for reversal is that this conviction is flagrantly against the evidence which is rested upon the idea that the only evidence that these men robbed Gibson of $4 and a package of cigarettes is the evidence of Gibson himself, while none of the other witnesses saw the defendants get this money or get these cigarettes. But the other witnesses corroborate Gibson in the other facts connected with the robbery, and we cannot say there was no evidence to sustain this conviction. The defendants had no money before the robbery, and Gibson had furnished them money then to buy whisky to furnish entertainment to the party, and after the robbery the defendants had money and were buying whisky for their entertainment about the time they were arrested.

### The Instruction.

The defendants are complaining of the instruction given, in which complaint we find no merit. They are also complaining because the court did not submit the question of larceny, which is a degree of robbery; also that of assault and battery. In support of their contention they cite and rely upon the case of Southerland, Lawson & Vaughn v. Com., 217 Ky. 94, 288 S. W. 1051, but the facts in that case are so very different from the

facts in this one as to render what was said in that case without application in this one.

In the Southerland, Lawson & Vaughn Case, the defendants admitted taking a pistol from Prewitt, but alleged that they did so without any intention of permanently depriving Prewitt of his pistol, but took it solely to protect themselves against the use by Prewitt of that pistol against them in his enraged condition, thus presenting a very different state of facts from the facts presented here.

Such instructions were held proper in the Southerland Case because of the admissions made by those men, for robbery is a larceny done by force or putting in fear; but these men do not admit taking any property from Gibson, hence they presented no theory in this case requiring such instructions.

Finding no errors in the record, the judgment is affirmed.